CURRAULT, Judge.
This appeal originates in the Twenty-Fourth Judicial District Court, Division “K”, Parish of Jefferson, wherein the Honorable Alvin R. Eason dismissed plaintiffs claim for damages upon a finding that plaintiff failed to carry his burden of proof by a preponderance of the evidence that his injuries were causally related to an automobile accident occurring May 15, 1982. We affirm.
Plaintiff, Joseph G. Ledet, Jr., filed this lawsuit for damages for personal injuries he claimed he sustained in an automobile accident on May 15, 1982. The suit was against the alleged tortfeasor Katherin Duff and her insurer, Government Employees Insurance Company (GEICO), both of whom settled out before the matter went to trial. Plaintiff chose to pursue his action against his uninsured motorist carrier, State Farm Mutual Automobile Insurance Company. He also maintained that he lost his job with Louisiana Gas Services as a result of the injuries sustained in the accident sued upon.
At the beginning of trial, it was stipulated that defendant Katherin Duff had no other insurance other than the Five Thousand Dollar ($5,000) policy issued by GEI-CO. It was further stipulated that State Farm had issued an under-insured motorist policy to the appellant which was in effect on the date of the accident in question with limits of Ten Thousand Dollars ($10,000) for each person. It was also stipulated that should Dr. Vincent Tumminello and Dr. Robert A. Fleming testify, they would testify in accordance with their reports which were entered into evidence as D-2 and P-1 respectively. Finally, it was stipulated that State Farm had paid appellant Five Hundred Eighty-Two Dollars and Ninety Cents ($582.90) in medicals under the ined-pay provisions of the policy.
According to the testimony of plaintiff, the accideht occurred on May 15, 1982 at the intersection of Huey P. Long and Seventh Street. Ledet testified that he had the right-of-way when defendant Duff, who had stopped at a stop sign, failed to yield the right-of-way and hit his van broadside.
After the accident, Ledet said he felt pain in the left arm, shoulder, knee and back. He went immediately to the West Jefferson General Hospital emergency room where he was advised that they could find nothing wrong with him other than bumps and bruises. Ledet was emphatic that he had told the doctors at the hospital that he had back problems the night of the accident.
After the automobile accident, Ledet first saw Dr. Daniel A. Talbot on June 19, 1982, complaining of low back and mid-back pains. Dr. Talbot conducted a clinical examination, including X-rays; and, finding everything within normal limits, made a diagnosis of low back strain. Other than some pain medications and muscle relaxants, Dr. Talbot prescribed no treatment for plaintiff and requested that he return in a few days for a repeat examination. Plaintiff returned on June 21,1982 and was last seen on July 9,1982. Because plaintiff continued complaining about the same problems, Dr. Talbot felt an orthopedic evaluation was necessary, and accordingly gave plaintiff a referral.
Plaintiff was then seen by Dr. Robert A. Fleming on July 20, 1982, still complaining of pain in his lower back. Dr. Fleming’s diagnosis was a resolving lumbar sprain and recommended that plaintiff refrain from any work-related, carrying activities. Plaintiff was seen again on December 10, 1982, complaining of continued discomfort and Dr. Fleming recommended a C.A.T. of his spinal canal. It appears from the record, however, that this procedure was never performed.
Dr. Edna M. Doyle, a physician specializing in physical medicine and rehabilitation, saw plaintiff on January 12, 1983. Her diagnosis was minor intervetebral derangement, myofascial strain and hamstring and paraspinal tightness. Dr. Doyle performed a manipulation of plaintiff’s back and placed him on anti-inflammatory medi *103 cation. Plaintiff was seen again on January 19, 1983, showing signs of improvement; and was finally seen on February 16, 1983. Dr. Doyle felt that plaintiffs problems had resolved and she discharged him.
After complete adjudication, the trial court dismissed plaintiffs demands concluding:
“The testimony and the evidence in this case is so conflicting that the Court is of the opinion that the plaintiff has not proven more likely than not that he had a back injury related to the subject accident.”
Plaintiff now appeals, asserting such conclusion to be error.
The applicable law was succinctly stated in Edwards v. Bankers & Shippers Ins. Co., 432 So.2d 1138, 1140 (La.App. 3d Cir.1983):
“In situations involving multiple accidents, whether preceding or subsequent to the accident at issue, it is well settled that a tortfeasor is liable for the direct and proximate results of his wrongful act.... Furthermore, the plaintiff has the burden of proving by a preponderance of the evidence the causal connection between the accident and the injuries claimed.... Whether or not this burden has been sustained is a question for the trier of fact and its finding will not be disturbed on appeal unless clearly wrong.” (Citations omitted)
Appellant testified he saw Dr. Talbot one week after the May 15 accident. Dr. Talbot stated appellant’s first visit was on June 19, 1982, over one month after the accident. At this visit, appellant gave a history of having pain for only the four days prior to that visit. Additionally, appellant informed Dr. Talbot of a previous work-related accident where appellant had slipped and fallen on March 5, 1982, while carrying his Itronmeter machine.[1]
A complete examination of appellant was performed by Dr. Talbot on that first visit; and, upon direct examination by appellant’s counsel, Dr. Talbot testified:
“Q. What were his complaints, Doctor?
A. Well, when he came to me, he had complaints of pains in the lower back region for the past four days and he also gave me a history of having previous back problems prior to this visit.
Q. Did he describe that previous back problem to you?
A. He said that they were related to his carrying a heavy piece of equipment, which was necessary for him to do his job as a meter reader.
Q. Did he relate what was causing the back injury that you were looking at at that time?

A. He felt when I questioned him it was related to his carrying the work related equipment.

Q. But at the time you saw him, did he mention anything about the accident to you?
A. Yes, sir. The accident, to my knowledge, did not cause a back injury. He was treated for a pain in the left lower arm, left knee and right shoulder problem at the emergency room. I reviewed their x-ray report and there was (sic) no x-rays taken of the back that I was able to find.
Q. Did you take any x-rays?
A. Yes,' sir. We took x-rays of the lower back on the date of his first visit. June 19th, and I felt that they were within normal limits.
Q. Did you give him a clinical examination on that visit?
A. Yes, sir. We did, and I felt that he did have a low back strain, muscular strain in his low back. I felt that it was probably work related as opposed to being related to his accident and prescribed mus- *104 ele relaxants and some pain medication for him.
Q. What did your examination consist of, Doctor?
A. The exam on the x-rays is to check him for any evidence of nerve root irritation and muscle spasm and deformity and so forth, and I wrote no findings, so in essence, the examination was within normal limits objectively.”
At appellant’s request, Dr. Talbot wrote a letter to appellant’s then employer, Louisiana Gas. This letter was read into the record as follows:
“Dear Mr. Bartholomew: This letter is being written at the request of Mr. Le-det, an employee of Louisiana Gas. This young man has been having recurrent problems with his back, which are probably related to his needing to carry a rather heavy piece of equipment as he checks gas meters. Joseph is not a heavy individual and it was my feeling that the weight he is required to carry does contribute to his repeated back problem. I have suggested to Joseph that either he seek employment elsewhere at a job that is not as physically demanding or that he request a transfer to another department in Louisiana Gas Company.”
John Patai, the manager of compensation and employment for Louisiana Gas Service Company, testified that after receipt of Dr. Talbot’s recommendation that the appellant be switched to light duty because the injuries he was experiencing were work-related, Louisiana Gas sent the appellant to Dr. Fleming. According to Dr. Fleming’s report, P-1, he first saw the appellant on July 20, 1982 (over two months after the automobile accident). Appellant told Dr. Fleming that since the accident two months earlier, he had been experiencing low back pain. Dr. Fleming noted that the appellant related that he had had occasional tinges of pain in his low back in the past and diagnosed plaintiff as having a resolving lumbar sprain.
Dr. Fleming, just as Dr. Talbot, indicated that the appellant, thin of stature, should not be carrying a data meter since the combination would lend itself to repeated low back insults. According to Dr. Fleming, it would be in the appellant’s best interest to place himself in another job situation. This recommendation coincided with Dr. Talbot's own independent recommendation that the appellant should seek a different occupation. Patai testified that, based upon the report of Dr. Fleming dated July 23, 1983, plaintiff was terminated on August 6, 1982.
Appellant was sent to Dr. Edna Doyle at the recommendation of his counsel. Dr. Doyle first saw the appellant on January 12, 1983 (some seven months after the accident). Appellant gave Dr. Doyle a history different from that given in his own direct examination. On direct examination, he testified that he started experiencing problems with his back immediately. Dr. Doyle testified that the appellant told her that he did not hurt immediately, but that since his knee was cut he went to the hospital that evening. She testified that appellant told her that he had a two to three week delay before his back began to hurt. She commented:
“It makes it more reasonable (to have a delayed pain reaction) because I always tend to be very suspicious of people who are hurting right away unless they hit their head or something.”
She was never advised that appellant, at trial, testified he started having back pains “right away.” In addition, Dr. Doyle was not advised by Mr. Ledet that he had suffered a March 5, 1982 back injury on the job. In fact, Dr. Doyle testified that during her entire treatment of the appellant, she was under the impression that there was only one injury — the May 15th automobile accident.
In view of the medical evidence and testimony, considering the many contradictory statements appellant made concerning the source of his injuries to Dr. Talbot and Dr. Doyle, and further considering the plaintiff’s crucial omissions of fact to Dr. Doyle *105 such as the March 5th work-related back injury and his job which required him to carry heavy equipment, we conclude that the trial court was not clearly wrong in finding appellant failed to prove by a preponderance of the evidence that his injuries were causally related to the May 15, 1982 accident.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.

. He was treated the same day by Dr. Tummi-nello who diagnosed an upper lumbar muscle strain and treated it accordingly and anticipated full recovery with no disability.